UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TRADEVIEW LTD., <br><br> Plaintiff, <br> v. <br> SALVADOR PALMA, <br><br> Defendant. | CIVIL ACTION NO. <br><br><br><br> Jury Trial Demanded |

## COMPLAINT

Plaintiff Tradeview Ltd. ("Tradeview" or "Plaintiff"), by and through its undersigned attorneys, Greenberg Traurig, LLP, hereby asserts the following Complaint against Defendant Salvador Palma ("Palma" or "Defendant"). In support, Tradeview alleges as follows:

## STATEMENT OF THE CASE

1. This is a case arising out of the illegal, fraudulent, and tortious acts of Tradeview's former consultant, Defendant Palma, who, for years, was using Tradeview's business bank account as his personal slush fund and, before leaving the company, misappropriated Tradeview's confidential and proprietary information in an attempt to start and/or fund his personal business ventures.

2. Between June 2015 and April 10, 2025, Tradeview engaged Palma as a consultant to develop new business for Tradeview. In connection with Palma's work for Tradeview, Palma was given access to one or several of Tradeview's bank accounts and the banking credentials associated with the account(s). Palma was also given access to Tradeview's confidential and proprietary information, including Tradeview's customer and introducing broker list. Tradeview

required Palma to execute a Non-Disclosure and Non-Solicitation Agreement to protect this confidential and proprietary information.

3.  In or around late March and/or April 2025, Tradeview discovered Palma had engaged in a variety of misconduct, including the misappropriation of Tradeview's funds and distribution and/or use of Tradeview's confidential and proprietary information. Palma resigned after Tradeview discovered his wrongful conduct.

4.  Prior to and following Palma's resignation, Palma has, in violation of the Non-Disclosure and Non-Solicitation Agreement, interfered with Tradeview's business relationships by attempting to steal Tradeview's clients, introducing brokers, and employees. Palma has also made and continues to make defamatory statements concerning Tradeview and its leadership in an attempt to harm Tradeview's reputation as well as its business, client, and employee relationships.

## PARTIES

5.  Tradeview is an exempt company that is incorporated and operating under the laws of the Cayman Islands. Tradeview is headquartered in and maintains its primary place of business in the Cayman Islands.[1]

6.  Palma is an individual domiciled in and a resident of the State of Connecticut.

## JURISDICTION AND VENUE

7.  This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are each a citizen of different states or foreign states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

---

[1] Cayman Island exempt companies are treated as United States corporations for the purpose of determining jurisdiction. *See HCP III Arlington TS LLC v. Grupo Cinemex, S.A. de C.V.*, 534 F. Supp. 3d 921, 925 (N.D. Ill. 2021); *Roosevelt REO PR Corp. v. Vega-Bonilla*, No. CV 16-1170, 2022 WL 22956608, at *4 (D.P.R. Aug. 23, 2022).

8. This Court has subject matter jurisdiction over Tradeview's Sixth Claim, which arises under the Federal Defense of Trade Secrets Act (18 U.S.C. § 1836(b)), pursuant to federal question jurisdiction under 28 U.S.C. § 1331.

9. Plaintiff's remaining claims all arise from the same case or controversy as its Federal Defense of Trade Secrets Act claim; therefore, the Court has supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367.

10. Venue is proper pursuant to 28 U.S.C. § 1391 because Palma is a resident of Connecticut.

## FACTUAL BACKGROUND

11. Tradeview is a foreign broker transacting business with non-U.S. customers. Tradeview provides online trading platforms and trading solutions, and Tradeview's customers engage in the purchase and sale of equity securities.

12. On or around June 1, 2015, Tradeview contracted with Palma to, among other things, market and promote Tradeview's online trading services to public customers and introducing brokers. Palma was primarily active in Latin America and had significant involvement in the Latin American arm of Tradeview's business.

13. In connection with the work he did for Tradeview, Palma was given signatory authority and access to one or several of Tradeview's bank accounts and its associated funds as well as Tradeview's confidential and proprietary information, including its customer and introducing broker lists.

14. Tradeview's introducing broker lists contain the names, addresses, and contact information of brokers that introduce customers to Tradeview.

15. In connection with the services Palma agreed to provide for Tradeview, Palma and Tradeview executed a Non-Disclosure and Non-Solicitation Agreement (the "Agreement"). A copy of the Agreement is attached hereto as Exhibit A.

16. The Agreement provides that "Palma has agreed to the restrictive covenants in this Agreement to induce [Tradeview] to retain [Palma] and to induce [Tradeview] to share Confidential Information and Trade Secrets with [Palma]." (Ex. A, at 2).

17. The Agreement specifies that one purpose of the Agreement is to prevent Tradeview's "Confidential Information and Trade Secrets from falling into the hands of business competitors." (Ex. A, at 2).

18. The Agreement further provides that "[Palma] shall (i) not directly or indirectly use or disclose, except as authorized by [Tradeview] in connection with the performance of [Palma's] duties as determined by [Tradeview], any Confidential Information (as defined hereinafter) that [Palma] may have or acquire (whether or not developed or compiled by [Palma] and whether or not [Palma] has been authorized to have access to such Confidential Information) [.]" (Ex. A, at 4).

19. The Agreement defines Confidential Information to include financial information, marketing information, intellectual property information, personal information of any Tradeview personnel, customer/client information, supply information, information with respect to any customer affairs, and Tradeview's methods, policies, and procedures for conducting business and providing service ("Confidential Information") (Ex. A, at 5-6).

20. The Agreement specifically includes as Confidential Information:

[C]ustomer/client information, such as (but not limited to) any compilation of past, existing or prospective customers' names, addresses or backgrounds, customer specifications and requirements, volumes of purchase, prices that particular or various customers are charged or pay for services, customer proposals or agreements between customers and [Tradeview],

status of customer accounts or credit, or related information about actual or prospective customers[.]

(Ex. A, at 5).

21. In or around late March and/or April 2025, Tradeview discovered that Palma and his colleague, an attorney named Carlos Duran, had formed a number of shell entities for the purpose of misappropriating funds from Tradeview.

22. Tradeview also discovered that Palma used Tradeview's banking credentials to, without authorization, open a number of additional Tradeview bank accounts. Palma added both himself and Duran as signatories to these accounts and issued charge cards to both himself and Duran from the accounts.

23. Palma, also without Tradeview's authorization, sent company funds for services never performed to Duran. This unlawful and unauthorized payment for services occurred on a monthly basis over a period of time exceeding three years and involved hundreds of thousands of dollars.

24. In total, Palma and Duran siphoned off approximately $900,000 of company funds over a three-year period, by diverting reimbursements for personal expenses and manipulating and falsifying expense reports.

25. Palma's misappropriation of Tradeview's funds initially went unnoticed because Palma and Duran falsified invoices and bank statements.

26. In addition to the misappropriation of company funds, Tradeview also discovered that Palma, in violation of the Agreement, copied and/or transferred to himself or third parties Tradeview's confidential and proprietary information, including Tradeview's customer and introducing broker lists, and distributed this information to unauthorized third parties.

27. For example, on August 7, 2023, Palma sent Tradeview's client database to Francisco "Frank" Diaz Mayoral, a colleague of Palma and a known competitor to Tradeview.

28. On April 10, 2025, Palma resigned from Tradeview to avoid any disciplinary measures that could be taken by Tradeview.

29. Following Palma's resignation, Palma has used, attempted to use, and/or intends to use the customer and introducing broker lists he stole from Tradeview to compete against it. Palma has solicited, attempted to solicit, and/or intends to solicit Tradeview's customers and introducing brokers in an attempt to steal business from Tradeview.

30. In addition, Palma has solicited, attempted to solicit, and/or intends to solicit Tradeview's employees in an attempt to have them join Palma in competing against Tradeview.

31. Before and following Palma's resignation, Palma made untrue and defamatory oral statements about Tradeview and its leadership to Tradeview's employees, customers and introducing brokers, and other third parties, including false accusations of unethical practices. These untrue and defamatory statements have resulted in harm to Tradeview's reputation as well as Tradeview's business, client, and employee relationships.

## CLAIMS FOR RELIEF
## COUNT I – Breach of Contract

32. Tradeview incorporates the Paragraphs above by reference as though fully stated herein.

33. The Agreement constitutes a valid and enforceable contract between Tradeview and Palma.

34. Palma executed the Agreement "to induce [Tradeview] to retain Palma and to induce [Tradeview] to share Confidential Information and Trade Secrets with [Palma]." (Ex. A, at 2).

35.     Following Palma's execution of the Agreement, Tradeview engaged Palma as a consultant from June of 2015 to April 10, 2025.

36.     Palma, pursuant to the Agreement, was precluded from misappropriating and disclosing Tradeview's Confidential Information without authorization.

37.     Palma, in breach of the Agreement, misappropriated and disclosed Tradeview's Confidential Information to third parties without authorization, including, but not limited to, disclosing Tradeview's client database to Tradeview's competitors.

38.     As a direct and proximate result of Palma's breach of the Agreement, Tradeview has suffered damages.

### COUNT II – Breach of the Implied Covenant of Good Faith and Fair Dealing

39.     Tradeview incorporates the Paragraphs above by reference as though fully stated herein.

40.     Tradeview reasonably expected to benefit from the Agreement because it would prevent Palma from misappropriating and disclosing its Confidential Information without authorization and would prevent Tradeview's Confidential Information "from falling into the hands of business competitors." (Ex. A, at 2).

41.     Tradeview was deprived of its expected benefit from the Agreement by Palma's misappropriation and disclosure of its Confidential Information, because, contrary to Tradeview's reasonable expectations, Tradeview's Confidential Information was obtained by and delivered to parties (including Palma) who intend to or are actively competing against Tradeview.

42.     Palma acted in bad faith by misappropriating and disclosing the Confidential Information because he did so for the purpose of competing against Tradeview in breach of the implied covenant of good faith and fair dealing.

43. As a direct and proximate result of Palma's conduct, Tradeview has suffered damages.

## COUNT III – Conversion

44. Tradeview incorporates the Paragraphs above by reference as though fully stated herein.

45. Palma, without authorization, assumed and exercised a right of ownership over Tradeview's funds by wrongfully misappropriating, diverting, and transferring those funds to himself and third parties for his benefit, without Tradeview's authorization.

46. Palma denied and excluded Tradeview of its rights to its company funds by wrongfully misappropriating, converting, diverting, and transferring those funds to himself and third parties, including third parties connected to Palma such as Carlos Duran, without Tradeview's authorization.

47. As a direct and proximate result of Palma's wrongful conduct, Tradeview has suffered damages.

48. Palma's actions were premediated and were done with oppression, malice, and a complete disregard for the rights of Tradeview. Therefore, in addition to Tradeview's actual damages, Palma is liable for punitive and exemplary damages as a result of his willful and intentional misconduct and reckless disregard of the rights and property of Tradeview.

## COUNT IV – Fraud

49. Tradeview incorporates the Paragraphs above by reference as though fully stated herein.

50. In connection with his employment, Tradeview entrusted Palma with access to one or several of Tradeview's business banking accounts.

51. Palma breached and abused Tradeview's trust by fraudulently misappropriating and transferring the funds in Tradeview's business banking account(s) to himself and third parties for his benefit.

52. Palma created shell companies, opened new and unauthorized Tradeview bank accounts, and falsified invoices and bank statements and/or withheld documents to conceal his fraudulent misappropriation and transfer of Tradeview's funds.

53. Palma knew that the falsified invoices and bank statements did not accurately represent Tradeview's financial activity; specifically, the falsified documents did not include details concerning Palma's fraudulent misappropriation and transfer of Tradeview's funds. For example, Palma paid $8,000 per month for several years to Duran for fictitious services and/or services never rendered. In addition, Palma used Tradeview's funds to pay Canadian tax authorities for taxes due and owing by a Canadian company owned or controlled by Palma.

54. Tradeview reasonably relied on the falsified invoices, bank statements, and other documents created by Palma to its detriment.

55. As a direct and proximate result of Palma's fraudulent conduct, Tradeview has suffered damages.

56. Palma's actions were premediated and were done with oppression, malice, and a complete disregard for the rights of Tradeview. Therefore, in addition to Tradeview's actual damages, Palma is liable for punitive and exemplary damages as a result of his willful and intentional misconduct and reckless disregard of the rights and property of Tradeview.

### COUNT V – Tortious Interference with Business/Contractual Relations

57. Tradeview incorporates the Paragraphs above by reference as though fully stated herein.

58. Tradeview has business and/or contractual relationships with its customers and introducing brokers.

59. Tradeview has business and/or contractual relationships with its employees.

60. Palma was aware of these relationships.

61. Notwithstanding this knowledge that Tradeview has business and/or contractual relationships with its customers, introducing brokers, and employees, Palma interfered with those relationships by providing Tradeview's customer and introducing broker list to third parties, and/or soliciting Tradeview's customers, introducing brokers, and employees to leave Tradeview and conduct business with Palma's competing companies.

62. Palma's interference was tortious and his actions were taken either knowingly and willfully with intent to harm, or negligently and with indifference to the harm of Tradeview.

63. As a result of the acts and practices described above, Tradeview has sustained damages and will continue to sustain damages because Tradeview's customers, introducing brokers, and employees may and/or will terminate their relationships with Tradeview.

64. Palma's actions were premediated and done with oppression, malice, and a complete disregard for the rights of Tradeview. Therefore, in addition to Tradeview's actual damages, Palma is liable for punitive and exemplary damages as a result of his willful and intentional misconduct and reckless disregard of the rights and property of Tradeview.

### COUNT VI – Violation of the Defense of Trade Secret Act

65. Tradeview incorporates the Paragraphs above by reference as though fully stated herein.

66. Tradeview owns and controls its Confidential Information, which includes the identities and contact information of its clients and introducing brokers.

67. Tradeview's competitors are constantly competing with Tradeview for its customers' business.

68. Palma, by means of fraud, artifice, or deception, obtained Tradeview's Confidential Information, including the identities and contact information of its clients and introducing brokers.

69. Palma copied, duplicated, downloaded, replicated, sent, mailed, communicated, or conveyed to third-parties Tradeview's proprietary and Confidential Information, including Tradeview's customer and introducing broker list.

70. Tradeview's customer and introducing broker list and additional confidential and proprietary information were trade secrets at the time they were misappropriated by Palma.

71. Palma knew, or had reason to know, that he acquired Tradeview's trade secrets by improper means.

72. Palma used or intends to use Tradeview's trade secrets without its express or implied consent to unfairly compete against Tradeview.

73. As a direct and proximate result of Palma's use of Tradeview's trade secrets, Tradeview has suffered damages in an amount to be proven at trial.

74. Palma's actions were premediated and done with oppression, malice, and a complete disregard for the rights of Tradeview. Therefore, in addition to Tradeview's other damages, Palma is liable for punitive and exemplary damages.

## COUNT VII – Conspiracy

75. Tradeview incorporates the Paragraphs above by reference as though fully stated herein.

76. Palma and various third parties, including Carlos Duran, agreed among themselves to fraudulently convert, misappropriate, and transfer Tradeview's funds.

77. Palma, in furtherance of the conspiracy, accessed Tradeview's funds and, without Tradeview's authorization, fraudulently transferred Tradeview's funds to third parties, including Carlos Duran.

78. Palma and various third parties, including Francisco "Frank" Diaz Mayoral, agreed among themselves to fraudulently copy, retain, distribute, and use Tradeview's Confidential Information.

79. Palma, in furtherance of the conspiracy, accessed Tradeview's Confidential Information and, without Tradeview's authorization, distributed the Confidential Information to third parties, including Francisco "Frank" Diaz Mayoral.

80. As a direct and proximate result of Palma's conduct, Tradeview has suffered damages.

81. Palma's actions were premediated and done with oppression, malice, and a complete disregard for the rights of Tradeview. Therefore, in addition to Tradeview's other damages, Palma is liable for punitive and exemplary damages.

## **REQUEST FOR RELIEF**

Claimant respectfully requests that this Court award it the following relief:

A. Compensatory damages and/or out of pocket losses incurred by Claimant in an amount of no less than $900,000.00;

B. An injunction to prevent Palma from using Tradeview's Confidential Information and to prevent Palma from soliciting Tradeview's clients, introducing brokers, and employees;

C. Punitive damages in the amount of $5,000,000.00;

D. Interest, including prejudgment interest;

E. Attorneys' fees and costs; and

F. Any other relief that the Court believes is just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Tradeview demands that this case be tried before a jury.

Dated:  December 17, 2025	GREENBERG TRAURIG, LLP

By:  */s/ Toby S. Soli*
         Toby S. Soli (ct-18697)
1 North Lexington Avenue, Suite 800
White Plains, New York 10601
Tel: (914) 286-2900
Fax: (914) 286-2990
Email: solit@gtlaw.com

Jeffry M. Henderson (pro hac vice forthcoming)
Kyle L. Flynn (pro hac vice forthcoming)
Tyler L. Salway (pro hac vice forthcoming)
Greenberg Traurig, LLP
360 N. Green St., Suite 1300
Chicago, Illinois 60601
Tel: (312) 456-8400
Fax: (312) 456-8435
Email: hendersonj@gtlaw.com
flynnk@gtlaw.com
salwayt@gtlaw.com

*Attorneys for Plaintiff Tradeview Ltd.*